# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05- 556M (DAR)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **MARION S. BARRY, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S REPLY MEMORANDUM
## IN SUPPORT OF PROBATION REVOCATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply memorandum in support of its motion to revoke defendant Marion S. Barry's probation privilege. Defendant's recent filings of his required tax returns, made only after the government's motion in this matter, do not relieve him of liability for committing new crimes while on probation. Accordingly, this Court should grant the government's motion and, for the reasons set forth below, impose a sentence of 12 months in prison, which is the bottom of the 12 to 18 month range recommended by the federal sentencing guidelines.

<u>Argument</u>

It was only after the government filed its motion for revocation of probation on February 1, 2007, that the defendant filed his federal tax return on February 9, 2007, and his District of Columbia tax return on February 10, 2007. In fact, after a filed extension, the federal return was due on October 18, 2006. Defendant did not seek an extension of the time to file his District of Columbia return, which was due on April 18, 2006. When the defendant failed to file his federal

tax returns by the October 18 deadline (after extension), his federal crime was complete. When he did not file his District of Columbia return as required in April 2006, the District of Columbia offense was complete as well. The defendant's memorandum in opposition to probation revocation does not dispute that he committed these crimes. Moreover, defendant's recent tax filings -- prompted by the government's motion that his probation be revoked -- do not undo or mitigate these offenses.[1]

It gives the government no pleasure to recommend that the defendant's probation be revoked and that a jail sentence be imposed. Marion Barry began his public career as a leader in the civil rights movement during the 1960s, and he has continued to serve the public as an elected official, including four terms as mayor of the District of Columbia. He is a man of substance and talent, and he should have used these gifts to avoid these latest violations of federal and local criminal laws. It is not this Court's job, the probation officer's job, the prosecutors' job, or even the taxing authorities' job to remind this sitting public official to file his tax returns, particularly because he is already on probation and was specifically admonished not to commit any additional crimes. Defendant offers no reason whatsoever for his commission of

---

[1] Although relevant to the government's motion, defendant's spotty history of good faith payments of taxes due under the plea agreement is not the core of his probation violation. Defendant argues that his plea agreement did not oblige him to accept any terms of payment from the IRS, no matter how onerous, and that he was entitled, therefore, to seek an arrangement for payment that was not "excessive." That argument may have superficial appeal, but it falls flat as any form of explanation for the defendant's commission of two separate crimes while on probation. Not part of the civil taxing apparatus, the government here expresses no view on what was or was not "excessive." That said, the record of the communications between defendant and the IRS would, if explored, reveal that defendant was far from diligent in pursuing an agreement to pay, leaving the IRS to pursue the civil remedy of garnishment. The record would also reveal that, while the defendant reached agreement to pay a monthly amount to the District of Columbia beginning January 2, 2007, he had already breached that agreement by February 3, 2007, no payment for February having been received to date.

these new crimes.  He advances no argument in mitigation.  Nor can he.  As the defendant

himself said at the time of his sentencing on March 9, 2006:

> There is no excuse and no reason that anyone ought to be
> able to give as to why you do not file and pay the appropriate
> federal and District taxes.  And therefore I will not try to even
> attempt to make an excuse or a reason.
>
> I take full responsibility for that action, Your Honor.  It is
> an unfortunate situation in my life that I wish had never occurred,
> but I am on the road to correct that. . . .
>
> Even though this is a personal matter, and I have been
> embarrassed, it has also embarrassed the citizens of our city and
> our country, and to those and to this court I apologize.   I am deeply
> sorry.
>
> To the citizens of the District of Columbia, I apologize.  I
> am deeply sorry.  To the citizens in the country of the United States
> of America, I apologize.  And so I recognize the seriousness of
> this.

(March 9, 2006, Sentencing. Tr. at 18.)

Almost eighteen months ago, in October 2005, the government agreed to the terms of a

plea in which it would take no position regarding the sentence to be imposed upon the defendant

for failure to file his federal returns, as well as his District of Columbia returns, for the six years

from 1999 to 2004.  The government agreed to take no position about the defendant's sentence

even though the federal sentencing guidelines called for a sentence of incarceration of between

12 and 18 months.  The government continued to take no position as to the sentence to be

imposed upon the defendant even when he waited nearly four months after pleading guilty to file

his delinquent tax returns --  returns which were not filed until the day before the original

sentencing date in this case.  The government continued to take no position as to the sentence to

be imposed even when the defendant made no arrangements to pay his delinquent taxes prior to the second sentencing and even when he tested positive for drug use while awaiting sentencing. Defendant's post-sentencing conduct confirms that he did not greet this leniency with true contrition.

During his sentencing hearing in March 2006, the defendant promised this Court that he appreciated and offered no excuse for the illegality of his conduct and that he intended promptly to reach an agreement to begin paying his delinquent taxes and to obey the tax laws in the future. The defendant assured that Court there was no need "to impose a condition of getting this done to make me do it.  I'm going to do it anyway."[2]

The defendant has promptly and repeatedly broken those promises and belied those assurances.  Notwithstanding his claims of remorse and declarations of his intention to comply in

---

[2]  Specifically, the defendant said:

> We had some difficulty, as Mr. Cooke explained, trying to negotiate with accountants to get this done.  A number of records were not in place.

> We intend to fully and vigorously move forward.  Counsel will be negotiating with the IRS in terms of amending our tax returns.  We just took the standard deduction because it was easier to do that at that time without having to dig up files and things that were not there.

> But we have a number of records now.  My bank statements and credit card statements, they are now being gotten in hand and provided to my new account.  So we intend to amend these returns, and we intend to negotiate as vigorously as we can to resolve this matter, and the court does not have to impose a condition of getting this done to make me do it.  I'm going to do it anyway.

March 9, 2006, Sentencing Tr. at 19

4

the future, the defendant has paid restitution and complied with the tax laws only when compelled to do so. The defendant's probation officer was forced to prod him into minimal compliance, efforts that resulted in an initial "good faith" payment of $1,000 on July 21, 2006, which was four months after sentencing. The defendant's continued delay in paying restitution forced the federal government to garnish his wages. The defendant began paying his delinquent taxes to the District of Columbia only after the federal garnishment had begun. However, even these payments to the District of Columbia now are in arrears.

All these things said, however, the government reminds the Court that the defendant's unsatisfactory history of paying his delinquent taxes is not the basis for the government's motion. The government's motion is based on the defendant's failure to file his federal and District of Columbia tax returns on time for the *seventh* year in a row. The defendant has not acted like a person who has been given the opportunity of probation, and he should not be treated like one. The defendant's conduct constituted two new crimes -- the same crimes for which he was placed upon probation in the first place. As Chief Judge Easterbrook of the Seventh Circuit recently wrote in United States v. Gama-Gonzalez, 469 F.3d 1109, 1111 (7th Cir. 2006):

> Th[e] theme -- that lenience in the past requires more lenience today -- has things backward. When mercy does not succeed in achieving specific deterrence, and the beneficiary continues a life of crime, we learn that additional severity is essential.

(Citation omitted).

By not even attempting to explain his new offenses in his opposition papers, the defendant exposes the willfulness underlying his disregard for the tax laws, as well as his lack of remorse. Eleven months have passed since the defendant received a lenient sentence of

probation, and he inexplicably has failed to do the first thing he was required to do as a condition of his probation -- obey the tax laws by filing his tax returns as required.[3]  He in no way deserves further leniency.

The defendant's probation should be revoked, and he should be sentenced to a period of incarceration.  Beyond making clear to this defendant that he is not above the law, a period of incarceration is needed to ensure general deterrence.  Because he occupies a public, elected office, defendant Barry's decisions affect not only the lives of tens of thousands of his constituents in Ward 8, but also hundreds of thousands of other District of Columbia citizens and residents.  His decisions affect how the hard-earned tax money of law-abiding taxpayers in the District of Columbia is spent -- indeed, the rate at which the money is taxed.  If, after being granted leniency for failing to meet his most basic obligation of citizenship -- filing and paying his own taxes on a taxpayer-funded salary -- for six years, the defendant receives no punishment for doing the same thing for a *seventh* year in a row, it is difficult to see why any other citizen would conform her conduct to the dictates of the law.

---

[3]  Furthermore, even when defendant Barry finally responded to the government's revocation motion by filing his tax returns, he did not pay all the taxes he owed in 2005 to both the federal government and the District of Columbia.  Neither has the defendant made a payment to reduce either of these delinquencies or arranged for a plan to pay these delinquent amounts.

<u>Conclusion</u>

WHEREFORE, the government respectfully requests that the Court revoke the

defendant's probation and impose a sentence of 12 months of incarceration.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610

BY:
/s/ Attorney's Typed Signature
JAMES W. COOPER
D.C. Bar No. 421169

/s/ Attorney's Typed Signature
THOMAS E. ZENO
D.C. Bar No. 348623

Assistant United States Attorneys
555 Fourth Street, N.W., Fifth Floor
Washington, D.C. 20530
(202) 514-6893
(202) 514-6957